IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANTOYA TATE, ) | |
| ) | |
| Movant, ) | |
| ) | Cv. No. 2:13-cv-02290-JPM-cgc |
| v. ) | Cr. No. 2:08-cr-20371-JPM |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Antoya Tate, Bureau of Prisons register number 22586-076, who is currently incarcerated at the Federal Medical Center in Lexington, Kentucky. (§ 2255 Mot., *Tate v. United States*, No. 2:13-cv-02290-JPM-cgc (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court DENIES the § 2255 Motion.

I.      **PROCEDURAL HISTORY**

   A.      **Criminal Case Number 08-20371**

On November 18, 2008, a federal grand jury returned a two-count indictment. Count 1 of the indictment charged that, on or about September 16, 2008, Tate knowingly and intentionally possessed with the intent to distribute over fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). (Indictment, *United States v. Tate*, No. 2:08-cr-20371-JPM (W.D. Tenn.), ECF No.

1.) Count 2 charged that, on or about September 16, 2008, Tate knowingly and intentionally possessed with the intent to distribute a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1). (Indictment, *id.*, ECF No. 1.) The factual basis for the charges is stated in the presentence report ("PSR"):

### The Offense Conduct

4. The following information was gathered from a review of materials contained in the files of the Unite[d] States Attorney.

5. On September 16, 2008, members of Memphis Police Department Organized Crime Unit team 12 executed a traffic stop of a black 1994 Cadillac El Dorado bearing TN 613 NPR. The vehicle was being driven by **Antoya Tate**. An investigating officer observed that the vehicle had extremely dark tinted windows and that the front windshield was cracked.

6. An officer stopped the vehicle at the corner of Inez and Carnes Street and found that it was occupied by **Tate** and no one else. When the officer approached the vehicle's driver window and asked **Tate** for her driver's license, the officer noticed a strong odor of marijuana emanating from the inside of the vehicle. At this time the officer also observed a large bulge in the area of **Tate's** left breast under her shirt. While looking for her license, **Tate** appeared to be attempting to hide her purse from the view of the officer.

7. When **Tate** turned to give the officer her license, the officer observed that **Tate's** hand was shaking and a piece of plastic was now sticking out from her left breast area of her shirt. The officer explained the reason for the traffic stop and asked **Tate** to get out of her car and have a seat in the rear of the squad car. Once seated in the rear of the squad car, the officer asked **Tate** what was the bulge in her shirt. **Tate**, with her hands pulled two plastic bags containing a green substance appearing to be marijuana from underneath her shirt.

8. **Tate** was then placed in handcuffs and placed under arrest. The officer called for an additional officer to make the scene of arrest, and then conducted a search of the vehicle. The search of the vehicle yielded three sandwich bags containing a white rock like substance appearing to be crack cocaine from the black and white purse that **Tate** was trying to conceal from the officer earlier. The officer initialed and numbered the bags recovered. The officer also recovered $366.00 dollars in U.S. currency from Tate's black and white purse.

9. The officer field tested all narcotics recovered from **Tate** on the scene and received positive results for marijuana and cocaine. Tate was transferred to the Organized Crime Unit office and was given Miranda warnings.

10. The narcotics weight at the property room: two plastic bags of marijuana tgw 15.8 grams; bag # 1 of crack cocaine tgw 117.8 grams; bag # 2 of crack cocaine tgw 93.8 grams and bag # 3 of crack cocaine tgw 40.6 grams (total of 252.2 grams of crack-cocaine).

(PSR ¶¶ 4-10.)

Pursuant to a written plea agreement, Tate appeared before the Court on June 18, 2009, to plead guilty to Count 1 of the Indictment. (Min. Entry, *id.*, ECF No. 27; Plea Agreement, *id.*, ECF No. 30.) At a hearing on October 16, 2009, the Court sentenced Tate to a term of imprisonment of one hundred twenty months to be followed by a five-year period of supervised release. (Min. Entry, *id.*, ECF No. 37.)[1] Judgment was entered on October 16, 2009. (J. in a Criminal Case, *id.*, ECF No. 38.)

Tate appealed her sentence. (Not. of Appeal, *id.*, ECF No. 43.) On September 14, 2010, the United States Court of Appeals for the Sixth Circuit issued an order affirming Tate's sentence. *United States v. Tate*, No. 09-6250 (6th Cir. Sept. 14, 2010).

**B.** **Case Number 13-2290**

On May 8, 2013, Tate filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). (§ 2255 Mot., *Tate v. United States*, No. 2:13-cv-02290-JPM-cgc (W.D. Tenn.), ECF No. 1.) On November

---

[1] The 2008 edition of the *Guidelines Manual* was used to calculate Tate's sentencing range. (PSR ¶ 14.) Pursuant to §§ 2D1.1(a)(3) & (c)(4) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for drug trafficking is 32 if the defendant possessed with the intent to distribute at least 150 grams but less than 500 grams of cocaine base. Tate received a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of 29. Given her criminal history category of II, the guideline sentencing range was 97-121 months. Tate was also subject to a mandatory minimum sentence of 10 years, or 120 months, pursuant to 21 U.S.C. § 841(b)(1)(A).

27, 2013, Tate filed an Amended Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("Amended § 2255 Motion"), which appears to be intended to supersede her original § 2255 Motion. (Am. § 2255 Mot., *id.*, ECF No. 3.) This motion presents the following issues:

1. "Due Process of the Constitution Amendment" (Am. § 2255 Mot. at PageID 23, *id.*, ECF No. 3);

2. "Sentence is Unconstitutional" (Am. § 2255 Mot. at PageID 24, *id.*, ECF No. 3);

3. "Ineffective Assistance of Counsel" (Am. § 2255 Mot. at PageID 26, *id.*, ECF No. 3); and

4. "Cruel and Unusual Punishment" (§ 2255 Mot. at PageID 28, *id.*, ECF No. 3).

In an order issued on June 18, 2014, the Court directed the Government to respond to Tate's § 2255 Motion. (Order, *id.*, ECF No. 6.) The Government filed its Answer on June 20, 2014. (Answer, *id.*, ECF No. 7.) Tate did not file a Reply.

## II. LEGAL STANDARD AND ANALYSIS

"The Antiterrorism and Effective Death Penalty Act amended 28 U.S.C. § 2255 by adding a time-limit provision for Section 2255 motions. As amended, Section 2255 precludes a prisoner from filing Section 2255 motions more than one year after the conviction becomes final." *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000). Section 2255 now provides that the one-year limit begins from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

4

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Of these four dates, the only one relevant in the instant matter is "the date on which the judgment of conviction becomes final." *See* 28 U.S.C. § 2255(f)(1). Tate's § 2255 Motion was filed over two years after her conviction became final.

The one-year statute of limitations in 28 U.S.C. § 2255(f) is subject to equitable tolling under extraordinary circumstances. *Reed v. United States*, 13 F. App'x 311, 312 (6th Cir. 2001). When determining whether equitable tolling is appropriate, the Sixth Circuit applies a five-factor balancing test, which weighs:

> (1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011) (quoting *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006)). "Where, as here, the petitioner does not claim ignorance of the filing requirement, the court must focus its inquiry on the petitioner's diligence and 'the reasonableness of his ignorance of the effect of his delay.'" *Id.* (quoting *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004)). Tate avers that, after her appeal was denied, she "started researching [her] criminal case [her]self and [she] came across many errors that [she] believe[s] are a violation." (Am. § 2255 Mot. at PageID 33, *Tate v. United States*, No. 2:13-cv-02290-JPM-cgc (W.D. Tenn.), ECF No. 3.) Although Tate avers that she notified her attorney about these errors and received no response, she provides no explanation for her failure to file her

petition within the one-year limitation period. (*See* Am. § 2255 Mot. at PageID 33, *id.*, ECF No. 3.) Additionally, Tate does not aver that she lacked access to legal resources or that she was ignorant of the filing requirement.

Tate's judgment became final in December 2010.[2] Tate has failed to show that she is entitled to equitable tolling. Accordingly, the § 2255 Motion is DENIED as time-barred.

**III.     APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir.

---

[2] Tate did not file a petition for a writ of certiorari. The time in which she could have petitioned for certiorari expired on December 13, 2010, ninety days after entry of the Court of Appeals' judgment, and sixty-eight days after the issuance of the Court of Appeals' mandate. *See Clay v. United States*, 537 U.S. 522, 527-28 (2003) ("Finality attaches when . . . the time for filing a certiorari petition expires.").

2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, Movant's claims are time-barred and, therefore, she cannot present a question of some substance about which reasonable jurists could differ. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file her motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[3]

---

[3] If Movant files a notice of appeal, she must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.

IT IS SO ORDERED this 10th day of December, 2015.

                                                /s/ Jon P. McCalla
                                                JON P. McCALLA
                                                UNITED STATES DISTRICT JUDGE